[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action in seven counts brought by the plaintiff Navy Federal Credit Union against Nicholas Perugini, III, Susanna Perugini and Harte-Nissan, Inc. Count one alleges breach of contract as to defendants Nicholas Perugini, III and Harte-Nissan, Inc. Count two alleges default on note as to defendant Nicholas Perugini. III Count three alleges breach of security agreement/restrictive endorsement as to defendants Nicholas Perugini, III and Susanna Perugini. Count four claims treble damages for theft pursuant to C.G.S. Section 52-564 as to Nicholas Perugini, III and Susanna Perugini. Count five alleges negligence as to Nicholas Perugini, III and Susanna Perugini. Count six alleges violation of C.G.S. Section 14-171(b) as to Harte-Nissan, Inc. Count seven alleges breach of implied contract as to all defendants. Harte-Nissan. Inc. pleads by way of special defenses, contributory negligence, waiver and statute of limitations C.G.S. Section 52-584.
The defendant Susanna Perugini appeared pro se and pled in answer to the complaint that her ex-husband had obtained a loan through Navy Federal Credit Union of his own accord; that she was not present when he purchased the vehicle; and that she did not sign any loan agreement. She goes on in her answer to state that she learned through mutual friends that her husband had forged her name on the paperwork when he purchased the vehicle and that she had never co-signed on the loan.
The defendant Nicholas Perugini is a non-appearing defendant who was defaulted for failure to appear.
Neither defendants Nicholas Perugini nor Susanna Perugini were present at the trial.
The facts are as follows. On February 25, 1993 Nicholas Perugini made a telephone loan application with Navy Federal Credit Union for $12,000 to finance the purchase of a 1993 Nissan CT Page 3414 Pathfinder from Harte-Nissan, Inc. On that date Nicholas and Susanna Perugini had entered into a purchase agreement with Harte-Nissan, Inc. (HARTE). The Peruginis informed the Harte sales manager, Baylis, that they intended to obtain financing through Navy Federal Credit Union (NFCU). NFCU did not contact Harte about their financing the vehicle before delivery. In those instance where there is no lender contact about financing Harte has the buyer sign a form stating whether a lien is required on a vehicle and certifying to the information given.
On March 9, 1993 the Peruginis took delivery of the vehicle from Harte informing John Leone, the employee they dealt with, that there would be no financing for the vehicle purchased and signed the certification to that effect. Based on that certification all of the documentation for the sale including a new purchase order were prepared showing no lienholder. After the documents were executed the Peruginis turned over the check for the car to the finance manager, Baylis. Delivery of the vehicle took place on March 9, 1993 at which time the car had been registered with Motor Vehicle and Title Application delivered.
The NFCU check for $12,000 had a restricted indorsement on the reverse side of the check. None of Harte's employees noticed it. NFCU never received the certificate of title needed to perfect its lien on the vehicle.
In the normal course of Harte's automobile business, a lender will notify Harte that they are financing the vehicle. NFCU did not contact Harte. Normally, if a lienholder does not receive a certificate of title from the Department of Motor Vehicles within one hundred twenty days after it disburses funds, it will contact Harte. NFCU did not.
The procedure followed by NFCU when it has not received a certificate of title is to send within eighty-five days after disbursement of their check, a letter to the person who borrowed the money. Fifty days later, if it still does not have the title certificate, it sends another letter to the borrower. Then it sends a third letter after sixty-five days and a fourth letter after eighty days. If it still does not have the title that point, NFCU drops the matter, as long as the borrower is not delinquent with his or her loan payments. NFCU does not contact dealers regarding missing titles. If the loan is not delinquent, NFCU never contacts the dealer. In the instant case, the loan was not delinquent at the time the last letter regarding title would CT Page 3415 have been sent. At that point NFCU made a business decision not to pursue the title for the Perugini vehicle.
The Perugini loan did not become delinquent until January of 1995. NFCU made no contact with Harte about the certificate of title or about the fact that it expected a lien on the vehicle until January 25, 1995.
In the meantime, in the Spring of 1994 Mr. Perugini had returned to Harte to sell back the 1993 Nissan Pathfinder. Harte was unaware at the time, that there was any claim for a lien by NFCU. Nicholas Perugini resold the vehicle to Harte for $13,700. Harte resold the vehicle for $16,280 at Southern Auto Auction.
As of November 10, 1998 the principal of the debt is $15,161.03. The interest is $4,680.68.
Count One — as to Harte Nissan, Inc.
A contract is created upon offer, acceptance and consideration. Acceptance of the offer must be explicit, full and unconditional See Bridge port Pipe Finishing. Co. v. DeMatteoConstruction Company, 159 Conn. 242, (1970). A basic tenant of contract law is that there must be a meeting of the minds for a contract to be found. See Zahornacley v. Edward Chevrolet. Inc.,
37 Conn. Sup. (1981). The burden is upon the plaintiff to prove a meeting of the minds to establish its version of the claimed contract. Bridgeport Pipe Finishing Co., supra.
In the instant case the plaintiff, NFCU, believes that the loan proceeds check containing the restrictive endorsement was an offer to contract to the defendant Harte that Harte accepted the benefit of the contract, namely $12,000.00; and, failed to perform its obligation under the contract, to record and deliver the first lien on the vehicle to plaintiff.
Acceptance of an offer to be bound to a contract can be indicated by the word or acts of an offeree. Bridgeport PipeFinishing Co., 159 Conn. 242 (1970). In the instant case the act of the defendant Harte, called for not only the cashing of the check but also recording and delivery of the first lien on the vehicle to the plaintiff. Without delivery of the first lien to the plaintiff by Harte, the plaintiff cannot presume acceptance of the contract. CT Page 3416
The procedure the plaintiff follows when it does not receive title is to contact by mail the person to whom the loan was made. After four letters to the borrower with no title forthcoming all efforts by the plaintiff stop. At no time is the dealer contacted by the plaintiff. The only time the dealer is contacted about the title is when the borrower defaults on his loan payments. In this case two years went by before there was a default. During those two years the car on which the loan was taken was traded back to the same dealer, who had no knowledge that the plaintiff, NFCU, did not have title and was still owed money on their loan.
The plaintiff in the instant case is located in Virginia. The whole loan transaction was done by phone and by forms mailed back and forth between the plaintiff, the lender, and the defendant, Nicholas Perugini, III, the borrower. The dealer was not contacted by the plaintiff at any time before the sale identifying itself as the source of the money for the purchase of the car. In fact the dealer was told by Nicholas Perugini, III, that no lien was required on the car and signed a form to that affect provided by the dealer.
This court finds that acceptance of the contract involved the taking of two actions by the defendant Harte. The first act was negotiating the check. The second act was seeing that the plaintiff NFCU received title. When the plaintiff did not receive title within a reasonable period of time, that is within 60 or 90 days the, plaintiff could not assume acceptance of the contract and was put to making inquiry of the defendant dealer, Harte, because at that point, NFCU had not performed the act signifying acceptance, that is sending NFCU title.
For the reasons as stated this court concludes that there is not an express contract between the plaintiff NFCU and the defendant Harte. Accordingly judgment may enter for the defendant Harte as to Count one.
Count Seven — Breach of Implied Contract as to Harte Nissan, Inc.
For the reasons stated as to Count one the court concludes that there was no implied contract between the plaintiff NFCU and the defendant Harte. Accordingly judgment may enter as to count seven for the defendant Harte.
Count Six — violation of C.G.S. § 14-171(b) as to Harte-Nissan, Inc.. CT Page 3417
Connecticut General Statutes Section 14-171(a) states in pertinent part that the application for a Certificate of Title of a motor vehicle shall be made by the owner and shall contain . . . the name and address of any lienholder . . . C.G.S. Section 14-171. This section, further states that if the application refers to a vehicle purchased from a dealer; it shall contain the name and address of any lienholder holding a security interest created or reserved at the time of the sale . . . and be signed by the dealer as well as the owner . . . I.D.
The defendant Harte does not dispute that the plaintiff is within the class of persons this statute is intended to protect, nor does it dispute that the harm in question is the type the statute was enacted to prevent. The defendant does dispute whether ox not its actions caused the damages claimed by the plaintiff.
The plaintiff NFCU withdrew its negligence count as to defendant Harte. In Count five which sounded in negligence the plaintiff had pled that the defendant Harte was negligent in that it had breached its duty to place plaintiffs lien on the motor vehicle title. Having abandoned the negligence claim as a basis for seeking damages for failure to place the lien on the motor vehicle, the plaintiff claims in Count six breach of a contractual duty created by C.G.S. § 14-171(b) as the basis for its claim of damages as to the defendant Harte.
The plaintiff cites no authority for the proposition that C.G.S. § 14-171(b) creates a contractual duty between the lienholder and the dealer. There is none. An action brought under C.G.S. § 14-171(b) would sound in negligence. SeeConnecticut Bank Trust Co. v. Stephen Pontiac Cadillac. Inc., 5 Conn. Cir.Ct. 491 (1968). That statute creates a duty in the dealer to note on the application for title the existence of a lienholder interest. "If the application refers to a vehicle purchased from a dealer, it shall contain the name and address of any lienholder holding a security interest created or reserved at the time of sale and the date of his security agreement and be signed by the dealer as well as the owner, and the dealer shall promptly mail or deliver the application to the commissioner." C.G.S. 14-171(b). A breach of that duty and injury resulting is actionable. Such an action would sound in negligence.
The defendant has pled that the action is barred by the CT Page 3418 statute of limitations Section 52-584 which states: "No action to recover damages for injury to person or property may be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered and except that no such action may be brought more than three years from the act or omission complained of." In the instant case NFCU followed the procedure of contacting the borrower 85 days after their check issued when NFCU has not received title. In this case the NFCU check was dated March 5, 1993. A letter was sent by NFCU 85 days after March 5, 1993. This would have been sometime in June 1993. Service of the complaint starting the instant action was made on September 11, 1996 on Susanna Perugini, on September 12, 1996 on Harte-Nissan, Inc., on September 19, 1996 on Nicholas Perugini, III. Harte registered the vehicle with Motor Vehicle on March 9, 1993.
On the facts found this court concludes that plaintiffs claim under count six, that is as to C.G.S. § 14-171(b), is barred by Section 52-584 having been brought more than two years after the omission was discovered by NFCU and more than dire years after Harte sent the application for title to the Motor Vehicle Commissioner with no entry as to NFCU as the lienholder. Accordingly judgment may enter in favor of Hart-Nissan, Inc as to Count six.
We next deal with those counts against Susanna Perugini, (now Susan Paixo). Susanna Perugini's answer denies the claims against her.
Count Three — As to Susanna Perugini
The plaintiffs first claim against Susanna is the allegation in count three that she breached the security agreement. The portion of the NFCU document entitled Promissary Note Security Agreement and Disclosure showing a signature, Susanna Perugini, reads as follows: "If you are not a borrower, but have an ownership interest in any of the collateral which is security for this loan, sign below. You agree that your ownership interest in the collateral is subject to the security agreement only, you are not bound to repay the loan." Even though NFCU had no contact whatsoever with Susan Perugini, NFCU base their assertion about her involvement in the lending transaction on the fact that she traded her car in toward the 1993 Nissan Pathfinder, which served as the down payment; and a copy of her driver's license kept by CT Page 3419 Harte. NFCU has not produced a scintilla of evidence that the signature on the Promissary Note, Security Agreement and Disclosure document is that of Susanna Perugini.
Count Four — As to Susanna Perugini
Count four alleges Susanna Perugini together with Nicholas Perugini sold the 1993 Nissan Pathfinder and pocketed the proceeds while Nicholas Perugini was in default of the promissary note, these actions constituting NFCU's claim of larceny in violation of CGS § 53a-119. The facts found by this court do not show any involvement by Susanne Perugini in the resale of the 1993 Nissan back to Harte, nor do the facts found show she realized any of the money received by Nicholas Perugini in that resale. There was no evidence presented by NFCU that pointed to her involvement. The court finds that NFCU has failed to prove its claim.
Count Seven — As to Susanna Perugini
Finally count seven alleges as to Susanna Perugini that she breached an implied contract by endorsing the NFCU check and depositing the funds into the account. In fact the NFCU check was signed by Nicholas Perugini and Harte negotiated the check. Susanna Perugini was not involved in any of those activities.
For the reasons stated this court finds in favor of Susanna Perugini as to court three, count four and count five. Accordingly judgment may enter in favor of Susanna Perugini as to count three, count four and count five.
Counts One, Two, Three, Four and Seven — As to Nicholas Perugini
We next address the claims against the defendant Nicholas Perugini who is a non-appearing defendant. Since Nicholas was defaulted for failure to appear the allegations as to him are deemed admitted. Thus as to count one which alleges breach of contract, count two which alleges default on note, count three which alleges breach of security agreement, count four which alleges theft, and count seven which alleges breach of implied contract, the court finds the defendant liable to the plaintiff NFCU. According to the affidavit of debt which deals with the note the following amounts are owed: Principal remaining on the note, $15,161.03: Interest in the amount of $4,680.68; costs of collection $19.50; attorney fees S2,976.00, [$2,976.00]. These total CT Page 3420 $22,840.36. The plaintiff seeks treble damages under the theft count computed by taking the face value of the vehicle as testified to by Harte as $16,200 and trebling that figure. The court finds the fair value of the 1993 Nissan Pathfinder to be $16,200. $16,200 trebled amounts to $48,600.00.
Judgment may enter in favor of the plaintiff Navy Federal Credit Union against the defendant Nicholas Perugini as to counts one, two, three, four and seven. Since count five is in the alternative to count three, having found for the plaintiff as to count three, we need not address count five as to Nicholas Perugini.
Damages in the amount of $48,600 are awarded Navy Federal Credit Union against Nicholas Perugini.
Hennessey, J.